JANVIER, Judge.
Alleging that Mrs. Charles R. Littlejohn was made ill as a result of something she ate at lunch at a Walgreen drugstore, in New Orleans, on September 13, 1954, she and her husband brought this suit for damages against Liberty Mutual Insurance Company, the liability insurance carrier of Walgreen Drug Company. Mrs. Little-john prayed for judgment for $23,000 as compensation for her pain, suffering, permanent injury and loss of earnings, and Mr. Littlejohn prayed for judgment for $2,000 to cover medical and hospital expenses made necessary by the illness of his wife.
The defendant insurer, admitting that Walgreen Drug Company owns and operates a lunch counter in the drugstore in question and exercises extreme care in the preparation and service of food in its stores, denied that Mrs. Littlejohn had been made ill as a result of something she ate on the day in question.
There was judgment dismissing the suit of plaintiffs and they have appealed.
Mrs. Littlejohn testified that on that day, September 13th, 1954, she ordered a regular lunch which was being served and which consisted principally of roast turkey and dressing; that she had eaten about one-third of a portion of turkey and dressing when she “realized it wasn’t what I thought it ought to be and didn’t taste right * * She did not eat the remainder of the lunch and left the drugstore without making any complaint.
Mrs. Littlejohn says that during the afternoon she made statements to acquaintances to the effect that she did not feel well, and this, to some extent, is confirmed by other witnesses. She says that that evening she was unable to eat any dinner and took nothing but a glass of ice tea; that during the night she became violently ill, suffering from acute nausea and diarrhea, to such an extent that she was required by her physician to be hospitalized on the following day. She remained in the hospital four days.
That she was violently ill from nausea and diarrhea is confirmed by her husband and by attendants at the hospital, especially by the intern who took her “history” when she entered.
However, these are circumstances which tend to throw extreme doubt on the claim of Mrs. Littlejohn that her illness resulted from the food which she ate at the drugstore on that date.
In the first place, she made no complaint either on that day or thereafter until the 11th of July, which was ten months after she had eaten the food. At that time she was pregnant and, on the advice of physicians, could not submit to an X-ray examination which might have determined whether the condition from which she then *337 suffered was the result of diverticulitis caused by deleterious food.
More important still is the fact that, when she was hospitalized on the day after she had eaten the food at the drugstore, she not only made no statement to the intern at the hospital to the effect that she had eaten the turkey and dressing, hut she told him that, on the evening of that day, she had eaten a soft shell crab for dinner.
When the intern made this statement as the result of examination of the history which he himself had taken from Mrs. Littlejohn, every possible effort was made by counsel for plaintiffs to discredit the intern and to show that by mistake he might have taken the statement from some other person in the hospital. He said that he could not identify Mrs. Littlejohn in the courtroom, but he stated that the history had been taken on that particular day and that the person who gave him the history had identified herself as Mrs. Littlejohn.
The testimony of the intern was attacked also on the ground that he was unable to state whether at the time at which Mrs. Littlejohn was admitted to the hospital he, the doctor, had actually received a certificate from the examining board of the Medical Association. The doctor stated that he had graduated from the medical school of the Louisiana State University either “at the end of May” or “June 1,” and that he had been notified that he had passed the State Board Examination, but that he was not certain that he had actually received his certificate. His testimony is, therefore, attacked on the ground that since he was not certain about that surely he could not be certain about the statement which he took from Mrs. Littlejohn. This contention makes no impression on us.
A further attack is made on the testimony of the intern based on the fact that the history seems to show the occupation of Mrs. Littlejohn as a “bus driver.” The truth is that the husband of Mrs. Little-john was a bus driver for the New Orleans Public Service, Inc. It is said that if he made a mistake of this kind, he could easily have made another mistake as to the identity of Mrs. Littlejohn. Again we attach no importance to this criticism.
The medical evidence leaves us convinced, that, prior to the day on which she ate the lunch at the drugstore, Mrs. Littlejohn had been suffering from diverticulitis. This, as. testified to by two of the physicians, is an, inflamed condition of diverticuli. Dr. Sam Nadler says that diverticuli is the plural of diverticulum and that “diverticulum is an outpouching of the lining, mucous membrane, through the wall of the gut.” He says that “in the gut, the lining membrane herniates and there is an opening in the wall;” that diverticuli vary in size “from a pinhead * * * to a diverticulum that may be an inch and a half or sometimes two. inches across in diameter.” We are told that food particles on being eaten sometimes find their way into these pouches and; remain there for a short time and cause an inflammation of the diverticuli, with the result which was suffered by Mrs. Little-john.
Dr. Walter Salatich made the following-statement :
“Diverticulitis is the inflammation of a diverticulum. A diverticulum is a hernia, in simple terms or comparable terms, of the mucous of the bowels, through some defect in the bowel. The lining of the bowel will come through the opening and produce a type of intestinal hernia, to put it in simple terms.”
And when asked if, as a result, “that is liable to catch any matter that is coming through the system, is that correct?” he answered: “Correct.” He was asked whether “a diverticulum is more or less a. congenital structure,” and he answered; “Some are congenital and some are ac-* quired.”
*338 All of this testimony leaves us convinced that a diverticulum cannot result immediately from the eating of deleterious food, and, as we have already stated, we are convinced that Mrs. Littlejohn was suffering from diverticulitis prior to the day in question.
The drugstore undertook to make quite an extensive test to determine whether or not it was possible for the turkey and dressing to have become contaminated and an expert chemist, Dr. William A. Pearce, was told just what process this particular food had been subjected to during preparation. He stated that if the food had been handled just as indicated by that test, it could not have caused the condition from which Mrs. Littlejohn suffered. Objection was made to this evidence on the ground that it was not shown that the conditions had been identical. Even if the evidence as to the test be eliminated, the other evidence in the record convinces us that there was more than grave doubt as to the cause of Mrs. Littlejohn’s condition and, in view of the fact that on this question of fact the District Judge concluded that she did not suffer as a result of the food eaten in the drugstore of the Walgreen Drug Company, we cannot reverse that finding.
Counsel for defendant in oral argument and in brief ask that we amend the judgment dismissing the suit and that by amendment we award to each of the two expert doctors a fee of $100.
In the District Court counsel for defendants filed a motion to tax such fees as costs and no action was had on that motion. The judgment was in favor of the defendant and the suit was dismissed at the cost of plaintiffs. Therefore, an affirmance of that judgment will leave the matter of the fixing of fees of the experts to the District Court under the rule to tax costs.
Accordingly, the judgment appealed from is affirmed at the cost of appellants.
Affirmed.